UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| KELECHI NICOLE MARONEY | § | |
| | § | |
| v. | § | CIVIL NO. 4:20-CV-690-SDJ |
| | § | |
| FEDEX CORPORATE SERVICES, | § | |
| INC. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Kelechi Nicole Maroney, a former employee of Defendant FedEx Corporate Services, Inc., brought this lawsuit against FedEx seeking redress for alleged race discrimination and retaliation. Maroney asserted these claims under federal and Texas state law.

Before the Court is FedEx's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment. (Dkt. #23). Having considered the motion, the subsequent briefing, the parties' arguments, and the applicable law, the Court concludes that the summary-judgment motion should be **GRANTED**.

Also before the Court is FedEx's Motion to Strike Plaintiff's Summary Judgment Evidence. (Dkt. #30). The Court concludes that the motion to strike should be **DENIED as moot**.

## I. BACKGROUND

In September 2018, Maroney began her employment as a Senior Collection Agent at FedEx, earning $15.00 per hour. [1] (Dkt. #23-1 ¶ 2); (Dkt. #26 at 10). Maroney

---

[1] In its Statement of Undisputed Material Facts, (Dkt. #23-1), FedEx identifies the year Maroney began her employment as 2019 rather than 2018. Based on the rest of the

1

was aware of the FedEx Acceptable Conduct Policy, EEO policy, and Antiharassment policy when she worked at FedEx. (Dkt. #21-3 ¶ 3). Maroney, who is an African-American, originally reported to Tom Capers and later reported to Sheri Dickerson. (Dkt. #26 at 10). Capers and Dickerson are both white, and were both hired by Debbie Young, who is Hispanic. (Dkt. #26 at 10). In her deposition, Dickerson stated that she "took a chance on" Maroney by hiring her because she did not have the exact skill set needed for the job and had to go through a couple of rounds of training. (Dkt. #23-7 at 11).

In the summer of 2019, Maroney missed seven days of work due to medical issues. (Dkt. #23-1 ¶ 7). Maroney followed FedEx policy and called in to let management know she would not be at work on those days. (Dkt. #23-1 ¶ 7). On July 10, 2019, Dickerson sent Maroney an email informing Maroney that her attendance was only at 77.68% and was impacting her performance. (Dkt. #26-1 at 108). Dickerson further informed Maroney that an action plan was needed to address her attendance, and that the email would constitute a "verbal/written warning." (Dkt. #26-1 at 108).

On July 11, 2019, Maroney was taking a personal call in the "huddle room" when a few minutes later Dickerson told her to get off the call. (Dkt. #26 at 12). Maroney contacted human resources that day to learn about her medical-leave options. (Dkt. #26 at 12). Maroney learned that she was ineligible for leave under the Family and Medical Leave Act because she had not been with FedEx for a year.

---

parties' briefing, the Court understands this to be a typographical error. *See, e.g.*, (Dkt. #23 at 7).

(Dkt. #16 at 12). Maroney then went to Capers's office and told him that she spoke with human resources about her attendance and that human resources told Maroney that "they could not hold the recent absences against her." (Dkt. #26 at 12).

That same morning, Maroney called FedEx's Alert Line, a phone line employees could use to report matters to human resources, to file a complaint about Capers favoring white employees over African-American employees—including allegedly writing up African-American employees for things that white employees did not get written up for. (Dkt. #26 at 13); (Dkt. #23-1 ¶¶ 14–15). As an example, Maroney stated that a white employee was allowed to sleep at his desk and Capers did nothing. (Dkt. #26 at 13). Maroney also stated that a white employee put her finger in Maroney's face and was verbally abusive but was not disciplined. (Dkt. #26 at 13).

Dickerson, Capers, and Maroney met later that day to address Maroney's absences. Maroney informed Dickerson and Capers that she had asked human resources about her absences. (Dkt. #26 at 13). According to Maroney, Capers then called Maroney a "tattle-tale" and a "snitch" and accused her of going behind Dickerson's back regarding the absences. (Dkt. #26 at 13). Maroney then called the Alert Line again to report that Capers called her a "tattle-tale." (Dkt. #23-1 ¶ 14).

After the meeting, Maroney spoke with Young and informed her that Maroney believed she was being treated inappropriately due to her race. (Dkt. #26 at 14). Young told Maroney that if she was unhappy at FedEx, she should leave, and that they were not holding her hostage. (Dkt. #26 at 14).

3

Around the same time, Dickerson began criticizing Maroney's job performance. On July 15, 2019, Maroney received an email from Dickerson concerning Maroney's weekly reports, instructing her that "[d]isputes are not to be removed/placed on Monday until the report has been generated." (Dkt. #26-1 at 109). Maroney responded that she would try to remember that in the future and thanked Dickerson for bringing it to her attention. (Dkt. #26-1 at 109). On July 16, 2019, Maroney received an email from Dickerson about a dispute and a related late fee resulting from an invoice Maroney disputed, asking Maroney to "[p]lease confirm and request a waiver if so." (Dkt. #26-1 at 110). Maroney responded that she did not know that a late fee had been generated, but she would send in the appropriate request. (Dkt. #26-1 at 110).

Dickerson also continued to attempt to manage Maroney's attendance issues. Dickerson requested that Maroney provide a doctor's note to substantiate her seven absences in June and July 2019. (Dkt. #23-1 ¶ 8). On July 16, 2019, Maroney provided medical records to Dickerson to support her absences, but Dickerson responded that the doctor's note only covered one absence, and more documentation would be needed to excuse the remaining absences. (Dkt. #26 at 16).

On July 17, 2019, Maroney called the Alert Line for the third time, stating that since her prior complaints to the Alert Line, Dickerson and Capers were retaliating against her. (Dkt. #26 at 16–17); (Dkt. #23-1 ¶ 16); (Dkt. #23-5 at 7–9). Maroney also reported that Dickerson was trying to write her up for her absences. (Dkt. #23-5 at 8). Maroney stated in her deposition that after her first complaint to the Alert Line, Capers would walk past her desk and laugh at her, snicker, make comments under

his breath, stare her down, and glare at her, which made her "uncomfortable and really anxious." (Dkt. #26-1 at 64–65). Maroney also stated that she started therapy around the time that she made her first Alert Line complaint. (Dkt. #26-1 at 66).

On July 23, 2019, Cathy Beaver from human resources interviewed Maroney about her Alert Line complaints, and Maroney provided examples of African-American employees being treated differently than white employees. (Dkt. #26 at 17–18). In response to Maroney's Alert Line complaints, it was recommended that Capers be issued a documented discussion, which is the first step in FedEx's progressive corrective action system. (Dkt. #26-1 at 240–41).

On July 31, 2019, Dickerson launched an investigation into Maroney's timekeeping entries. (Dkt. #26 at 18). Dickerson testified that she launched the investigation after observing Maroney and a coworker leaving the office without clocking out during a non-lunch period, returning, and then leaving again. (Dkt. #26 at 18); (Dkt. #23-1 ¶ 17); (Dkt. #26 at 9). Later that day, Maroney had a meeting in Young's office about her July 31 timekeeping activities and was asked to provide a written statement in a follow-up email. (Dkt. #23-1 ¶ 18). Maroney provided a follow-up statement and did not hear anything else about her July 31 timekeeping. (Dkt. #23-1 ¶ 19); (Dkt. #23-5 at 15).

On August 2, 2019, Kimberly McBrayer, a FedEx human resources advisor, emailed Maroney, asking her how things were going, to which Maroney responded that her relationship with her manager and senior manager had been "awkward and strained." (Dkt. #26-1 at 251). The same day, Dickerson emailed McBrayer requesting

termination paperwork for Maroney for the July 31 timekeeping issue, but the termination request was never approved. (Dkt. #26 at 19).

In the meantime, Maroney's performance issues continued. On August 15, 2019, Maroney informed Young that she needed to take a personal call. (Dkt. #23-1 ¶ 20). Maroney then had an approximately forty-minute call with her uncle about various personal items. (Dkt. #23-1 ¶ 21). Following the call, Maroney and Young had a meeting. Maroney stated in her deposition that Young told Maroney during the meeting that if she did not like it at FedEx, she could leave, because she was not being paid to take phone calls. (Dkt. #26-1 at 103–04). The day after that meeting, Young followed up with Maroney regarding the personal call in an email and informed Maroney that personal calls should be handled during meals and breaks. (Dkt. #26-1 at 129). Maroney responded to Young's email, stating that she did not recall Young telling her that personal calls should be made during break or lunch periods until they had the conversation after the August 15 phone call. (Dkt. #23-1 ¶ 24). Maroney also apologized for the length of the call. (Dkt. #23-5 at 17).

Subsequently, Maroney missed work on three consecutive days—August 20, 21, and 22, 2019. (Dkt. #23-1 ¶ 4). The record reflects that under FedEx's attendance policy, an employee is considered to have voluntarily resigned if she has missed three consecutive days at work without notifying management and if she is unable to be reached. (Dkt. #23-7 at 8).  In any event, after missing these three days and without speaking to anyone in FedEx management or FedEx human resources, Maroney never returned to work at FedEx. (Dkt. #23-1 ¶¶ 4, 31).

Meanwhile, Maroney interviewed for another job with Accent Care on August 7, 2019, which she accepted on August 9, 2019. (Dkt. #23-1 ¶¶ 32–33). In her new position, Maroney earned $17.00 per hour. (Dkt. #23-1 ¶ 33). As of August 9, 2019, Maroney knew she would be starting her new job at Accent Care on August 21, 2019. (Dkt. #23-1 ¶ 33).

The parties agree that during Maroney's employment at FedEx: (1) no one in management ever told her that they were taking any actions toward her because of her race or because she contacted the Alert Line; (2) Maroney never saw any written documents indicating that management was taking actions toward her because of her race or because she contacted the Alert Line; (3) Maroney could not identify any "write ups" Capers gave her; (4) no one at FedEx ever told Maroney that she should retire from FedEx; and (5) during her FedEx tenure, Maroney's job duties did not change. (Dkt. #23-1 ¶¶ 26–30).

Based on the foregoing, Maroney asserts claims for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and Chapter 21 of the Texas Labor Code, TEX. LAB. CODE ANN. § 201.001, *et seq.*, also known as the Texas Commission on Human Rights Act ("TCHRA"). FedEx seeks summary judgment on all of Maroney's claims.[2]

---

[2] Also before the Court is FedEx's Motion to Strike Plaintiff's Summary Judgment Evidence, (Dkt. #30), in which FedEx seeks to exclude certain deposition testimony regarding past discrimination complaints as hearsay and irrelevant. FedEx also seeks to exclude Maroney's deposition testimony referring generally to coaching emails. Because the Court concludes that even if this evidence is considered, summary judgment in FedEx's favor is still appropriate, the Court concludes that this motion will be **DENIED as moot**.

## II. LEGAL STANDARD

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). If the moving party presents a motion for summary judgment that is properly supported by evidence, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

Because Federal Rule of Civil Procedure 56 requires that there be no "genuine issue of *material* fact" to succeed on a motion for summary judgment, "the mere existence of *some* alleged factual dispute" is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (first emphasis omitted). A fact is "material" when, under the relevant substantive law, its resolution might govern the outcome of the suit. *Id.* at 248. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton*, 232 F.3d at 476 (citing *Anderson*, 477 U.S. at 248).

Courts consider the evidence in the light most favorable to the nonmovant, but the nonmovant may not rely on mere allegations in the pleading; rather, the nonmovant must respond to the motion for summary judgment by providing particular facts showing that there is a genuine issue for trial. *Int'l Ass'n of Machinists & Aerospace Workers v. Compania Mexicana de Aviacion, S.A. de C.V.*,

199 F.3d 796, 798 (5th Cir. 2000). If, when considering the entire record, no rational jury could find for the nonmoving party, the movant is entitled to summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

### III. DISCUSSION

Both Title VII and the TCHRA provide several theories of liability under which Maroney may recover. Maroney asserts that she was discriminated against on the basis of her race by being constructively discharged. Maroney also asserts that she was retaliated against. The legal framework for these claims under the TCHRA is the same as the framework for Title VII claims; therefore, the Court's analysis below applies to Maroney's claims under both federal and state law. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 n.10 (5th Cir. 2001) (explaining that TCHRA claims are generally analyzed under Title VII precedent); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir.1999) ("[T]he law governing claims under the TCHRA and Title VII is identical.") .

A plaintiff may prove a claim of race discrimination or retaliation either by direct or circumstantial evidence. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam). For a claim premised on circumstantial evidence, such as Maroney's claims, courts apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which shifts the burden to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its actions only if the employee first establishes a prima facie claim of discrimination or retaliation. *McCoy*, 492 F.3d at 556–57.

## A. Discrimination

To establish a prima facie case of discrimination, a plaintiff must show that she: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group." *Id.* at 556 (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)). For purposes of a discrimination claim, an adverse employment action is an "ultimate employment decision[] such as hiring, granting leave, discharging, promoting or compensating." *Id.* at 559.

FedEx argues in part that summary judgment is appropriate on the discrimination claims because Maroney failed to establish that she was discharged or otherwise suffered an adverse employment action. Maroney responds that she was constructively discharged, which qualifies as an adverse employment action.[3] FedEx

---

[3] Although it is not entirely clear, Maroney does not appear to argue that any of the "coaching emails" she received, the email warning regarding her absences, the timekeeping investigation, or the email critiquing her personal phone call constituted adverse employment actions for her discrimination claim. To the extent she does make this argument, it is not persuasive as all of these emails, except the warning email, were, at most, criticisms, and neither criticisms nor investigations amount to an adverse employment action. *Breaux v. City of Garland*, 205 F.3d 150, 157–58 (5th Cir. 2000) (stating that "mere accusations or criticism" and "investigations" are not adverse employment actions). Similarly, a mere warning does not amount to an "ultimate employment decision" as there was no financial or job-related consequence that resulted from the warning. *See McCoy*, 492 at 559 (holding that being placed on administrative leave was not an adverse employment action, because such actions encompass only decisions such as "hiring, granting leave, discharging, promoting, or compensating").

contends that there is no genuine issue of material fact regarding whether Maroney was constructively discharged.[4] For the reasons explained below, the Court agrees.

### i. Constructive discharge

"A constructive discharge occurs when the employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign." *McCoy*, 492 F.3d at 557 (quotation omitted). To determine whether an employer's actions constitute a constructive discharge, courts examine the following factors:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not.

*Id.* (citation omitted). "This inquiry is an objective, reasonable employee, test under which we ask whether a reasonable person in the plaintiff's shoes would have felt compelled to resign." *Id.* (cleaned up). A constructive-discharge claim requires a greater degree of harassment than that required by a hostile-environment claim. *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (citation omitted).

It is undisputed that Maroney was never demoted, her salary was never reduced, her job responsibilities were not reduced, and she was not reassigned. Nor was she offered early retirement. Instead, she was instructed on how to perform better in her same position through the "coaching emails."

---

[4] Maroney also argues that a hostile or abusive environment existed at FedEx, but states that such arguments are only relevant to her argument that she was constructively discharged and retaliated against, (Dkt. #32 at 8), and she did not otherwise raise a hostile work environment claim in her complaint.

Therefore, the only factor on which Maroney relies to attempt to establish constructive discharge is badgering, harassment, or humiliation. But Maroney was not subjected to the type of badgering, harassment, or humiliation that was so intolerable as to make a reasonable person feel compelled to resign. *See Vallecillo v. U.S. Dep't of Hous. & Urb. Dev.*, 155 F.App'x 764, 768 (5th Cir. 2005) (per curiam). Such harassment can only constitute a hostile work environment that could cause a constructive discharge if it is "severe or pervasive" and "create[s] an environment that a reasonable person would find hostile or abusive." *McCoy*, 492 F.3d at 558 (alteration in original) (quoting *Septimus v. Univ. of Hous.*, 399 F.3d 601, 611 (5th Cir. 2005)). The factors courts consider when determining whether an environment is hostile or abusive include "the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Id*.

Considering the evidence before the Court, there is no genuine issue of material fact that a reasonable person would not have found Maroney's work environment hostile or abusive. At most, Maroney has introduced evidence that Capers called her a "tattle tale," that he would laugh and glare at her and make comments under his breath, Young telling Maroney she could quit if she was not happy at FedEx, Dickerson attempting to get information to substantiate Maroney's absences, a warning about Maroney's attendance, a timekeeping investigation, and that Maroney received a couple of coaching emails. This conduct was objectively not

physically threatening or humiliating, and there is no evidence that it interfered with Maroney's job performance.

In fact, the coaching emails addressed undisputed issues with Maroney's performance and instructed her on how to improve her performance in the future. Similarly, Dickerson's requests that Maroney provide a basis for her absences and comply with the attendance and timekeeping policies are merely requests that Maroney comply with FedEx work rules. *See Harrison v. Mayorkas*, No. 21-161, 2021 WL 5907713, at *8 (E.D. La. Dec. 14, 2021) ("[H]eightened scrutiny of work performance and compliance with the work rules generally are not the type of harassment that can support a hostile environment claim." (citation omitted)). Further, glaring, mumbling, and laughing directed at Maroney is not severe enough that a reasonable person would find the environment to be hostile or abusive, regardless of the frequency of such conduct, which is unclear from the record before the Court. *See Montgomery-Smith v. George*, 810 F.App'x 252, 259–60 (5th Cir. 2020) (finding denials of promotions, laughing and glaring, and isolation and ostracism to be insufficiently severe to support a hostile work environment claim).

The Fifth Circuit has also held that "a plaintiff may be constructively discharged if the employer gives the employee an ultimatum to quit or be fired." *Perret v. Nationwide Mut. Ins. Co.*, 770 F.3d 336, 338 (5th Cir. 2014). Maroney testified in her deposition that she was told that if she was not happy, she should leave, because FedEx was not keeping her hostage. This is not an ultimatum as FedEx never threatened Maroney with anything if she continued at FedEx, and

FedEx never threatened to fire her if she did not quit. Because Maroney cannot establish that she was constructively discharged, and because she did not suffer any other adverse employment action, the Court concludes that summary judgment should be granted on Maroney's discrimination claim.

## B. Retaliation

To establish a prima facie case of retaliation, a plaintiff must establish that: "(1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020), *as revised* (Aug. 14, 2020) (quotation omitted). If the plaintiff establishes a prima facie case, then the defendant must provide "a legitimate, non-discriminatory reason" for the adverse employment action. *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). If the defendant does so, the burden shifts back to the plaintiff to prove that the proffered reason is pretextual. *Id.*

FedEx argues that Maroney has failed to establish a genuine issue of material fact regarding whether she suffered an adverse employment action and whether any such action is causally connected with her protected activity. The Court agrees.

### i. Adverse employment action

In contrast to a discrimination claim, "an adverse employment action in the retaliation context is one that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Price v. Wheeler*, 834 F.App'x 849, 858 (5th Cir. 2020) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53,

68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)). Reading her briefing liberally, Maroney alleges that the adverse actions she was subjected to were being asked for medical documentation for her absences, being called a "tattle-tale and snitch," "being treated less favorably than her Caucasian peers," receiving several "coaching" emails related to her performance, being subjected to a timekeeping investigation, being reprimanded for taking a personal phone call, and being constructively discharged.[5] (Dkt. #26 at 33, 34, 36).

While the standard for an adverse employment action is lower in the retaliation context than the discrimination context, the adverse actions alleged by Maroney are still insufficient to establish a prima facie case of retaliation. In determining whether an alleged retaliatory action is materially adverse, "courts look to indicia such as whether the action affected job title, grade, hours, salary, or benefits, or caused a diminution in prestige or change in standing among coworkers." *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 827 (5th Cir. 2019) (cleaned up).

First, reprimands that are no more than criticism of work do not constitute adverse employment actions. *See Price*, 843 F.App'x at 858 (holding that an oral reprimand and a low performance evaluation are not adverse employment actions in the discrimination or retaliation context). Thus, the coaching emails, the reprimand for taking a personal phone call, and the timekeeping investigation, which did not result in any disciplinary action, cannot constitute adverse employment actions. Similarly, Dickerson's requests for documentation substantiating Maroney's

---

[5] Maroney's constructive discharge argument fails for the reasons set forth in Part III(A)(i) *supra*.

15

absences is not an adverse employment action because it is merely administrative in nature and does not affect the "job title, grade, hours, salary, or benefits" or cause "a diminution in prestige or change in standing among coworkers." *Welsh*, 941 F.3d at 827; *Price*, 834 F.App'x at 858 (holding that being asked to do an administrative task does not constitute an adverse employment action).

Second, Maroney fails to present a genuine issue of material fact that she was treated less favorably than her white peers, much less that such treatment could constitute an adverse employment action. As the Fifth Circuit has explained, "[a] plaintiff who proffers the treatment of a fellow employee" must show that they suffered an adverse employment action "under nearly identical circumstances as those faced by the comparator [employee]." *Brown*, 969 F.3d at 580 (internal quotation marks and citation omitted). "Employees are similarly situated when they h[o]ld the same job responsibilities, share[ ] the same supervisor or ha[ve] their employment status determined by the same person, and have essentially comparable violation histories." *Id*. (internal quotation marks and citation omitted).

For her part, Maroney has failed to identify any evidence that the purportedly adverse actions she experienced were "taken under nearly identical circumstances" as those faced by a comparator employee. *Id*. (quotation omitted). Indeed, Maroney has not even identified many of the alleged comparators, much less provided evidence of their disciplinary history or any other evidence beyond her own subjective and vague observations that these other peers were somehow treated more favorably than her. Further, Maroney has failed to present evidence that she and the referenced

16

white employees share the same job responsibilities, share the same supervisor, or have their employment status determined by the same person. *See id.* Maroney also has not shown that she and her white peers have essentially comparable violation histories. *See id.* As such, she has not provided any evidence that these other employees are similarly situated and thus comparable to her.

Finally, being called a "tattle-tale and snitch," does not constitute an adverse employment action. *See Welsh*, 941 F.3d at 827 ("Title VII's anti-retaliation provisions do not protect employees from petty slights, minor annoyances, and simple lack of good manners." (quoting *Burlington*, 548 U.S. at 68)). Because Maroney has failed to present a genuine issue of material fact as to any adverse employment action, summary judgment is warranted on her retaliation claim.

### ii. Causation

Moreover, even if the coaching emails, timekeeping investigation, and email about Maroney's personal phone call could be construed as adverse employment actions in the retaliation context, the Court concludes that Maroney has failed to meet her burden on causation at the summary-judgment stage.

Regarding the causal connection required for a retaliation claim, a prima facie case can be established "simply by showing close enough timing between [the] protected activity and [the] adverse employment action." *Brown*, 969 F.3d at 577. However, "in order to survive a motion for summary judgment, a plaintiff must show a conflict in substantial evidence on the question of whether the employer would not have taken the adverse employment action but for the protected activity. *Id.*

(quotation omitted). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.*

Here, FedEx concedes that the prima facie showing of causation is established by the temporal proximity between the protected activity—Maroney's complaints to human resources and requests for FMLA leave—and the complained-of actions. As already discussed, however, Maroney has not presented a genuine issue of material fact regarding her claims of constructive discharge; therefore, the Court finds that constructive discharge cannot serve as an adverse action supporting Maroney's retaliation claim.

Even assuming without deciding that Maroney has established a prima facie case of retaliation, the Court finds that FedEx also has met its burden of providing a legitimate and non-retaliatory reason for all of the challenged actions. Specifically, FedEx states that Maroney was subjected to such actions because she had unexcused absences; she was off-premises while on the clock during a non-lunch period; she took a 40-minute personal phone call during work hours; and there were areas where her performance fell short of standards. (Dkt. #29 at 10). Therefore, the burden shifts to Maroney to show that FedEx's reasons are pretexts for unlawful retaliation. To demonstrate but-for causation, Maroney relies on the temporal proximity between her protected activity and the various challenged actions, arguments that white employees who engaged in misconduct were not disciplined, and evidence regarding FedEx's treatment of other African-American employees. Temporal proximity is

relevant, but is not enough standing alone to demonstrate pretext. *See Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F,3d 802, 808 (5th Cir. 2007).

After complaining to human resources, Maroney received several "coaching" emails regarding various aspects of her job performance, which included an email about her weekly aging reports and a late fee related to a dispute she was handling. However, Maroney does not dispute the underlying facts that FedEx says gave rise to each coaching email, namely that Maroney was having issues with her aging report and had not requested the proper waiver for the late fee. Therefore, Maroney has not raised a conflict in substantial evidence concerning whether FedEx would have sent these coaching emails but for her discrimination complaint. *See Price*, 834 F.App'x at 858–59 (holding that summary judgment was appropriate when employee failed to introduce evidence rebutting employer's argument that employee's insubordination justified the adverse employment action).

Similarly, FedEx initiated a timekeeping investigation and reminded Maroney that personal calls should be made during breaks after she took a forty-minute phone call during work hours. Again, Maroney does not dispute that she stepped out during the day without clocking out, which is what instigated the timekeeping investigation. She also does not dispute that she took a forty-minute personal phone call during work hours, though there is a dispute as to whether she had permission to make the call. Either way, Maroney does not contest that she made a forty-minute personal call while on the clock, and she admits that she apologized for the length of the call. The Court concludes that this evidence is not enough to raise a conflict in substantial

evidence that FedEx would not have otherwise addressed these issues in her timekeeping, especially given that her overall attendance had been down and was not yet fully excused.

And, as the Court has explained, Maroney's argument that she was treated less favorably than her white peers is without merit as Maroney has put forth no evidence that the adverse actions taken against Maroney were "taken under nearly identical circumstances as those faced by the comparator." *Brown*, 969 F.3d at 580 (quotation omitted).

Finally, Maroney also testified in her deposition that other African-American FedEx employees were allegedly subjected to harassment. Maroney attempts to rely on this testimony to show Capers's character and to argue that FedEx allowed a pattern of discriminatory behavior. However, the Court concludes that such character and pattern evidence is insufficient to establish a conflict in substantial evidence regarding whether Maroney would have otherwise received coaching emails and been subject to a timekeeping investigation, since Maroney does not deny any of the performance or time-keeping issues that were the foundation of the coaching emails or investigation.

Therefore, Maroney also has failed to meet her burden at the summary-judgment stage to establish that a substantial conflict in evidence exists regarding causation. For this additional reason, summary judgment will be granted on Maroney's retaliation claim.

## IV. Conclusion

For the foregoing reasons, FedEx's Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment, (Dkt. #23), is **GRANTED**. All claims asserted by Maroney are **DISMISSED WITH PREJUDICE**.

Additionally, for the reasons stated herein, FedEx's Motion to Strike Plaintiff's Summary Judgment Evidence, (Dkt. #30), is **DENIED as MOOT**.

**So ORDERED and SIGNED this 29th day of March, 2022.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE